UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARION MERRITT-RUTH and
SIDNEY GURLEY, JR.,

        Plaintiffs,

v.                                                              Case No. 14-12858

OFFICER LATTA, OFFICER CATO,              Hon. Patrick J. Duggan
OFFICER BLAIR, ANIL PRASAD,
ROSILYN JINDAHL, SAVITHIV
KAKAN, DANIEL DUCATT, PAULA
MEYER, KIMBERLY MCQUIRE,
BETH FRITZ, and JAMES
MACNAMARA,

        Defendants.

_____

## OPINION AND ORDER

      The present civil rights action, instituted by Marion Merritt-Ruth

("Plaintiff") as personal representative of the estate of Sidney Gurley ("Gurley" or

"Decedent"), arises from events transpiring while Gurley, a former Michigan

Department of Corrections ("MDOC") prisoner, was incarcerated at the Gus

Harrison Correctional Facility ("GHCF") in Adrian, Michigan.  Plaintiff's

Amended Complaint alleges that Gurley became ill after consuming a prison meal,

that he repeatedly sought medical treatment, that the treatment provided was

inadequate, and that less than one week after falling ill, Gurley was found deceased

in his jail cell.  Plaintiff, filing suit pursuant to 42 U.S.C. § 1983 and seeking

attorney's fees pursuant to 42 U.S.C. § 1988, contends that Defendants – various

GHCF personnel (the "MDOC Defendants") and healthcare contractors (the "Non-

MDOC Defendants") – violated Gurley's Eighth and Fourteenth Amendment

rights by displaying deliberate indifference to Gurley's serious medical needs.  The

Amended Complaint also endeavors to state a gross negligence claim arising under

the laws of the State of Michigan.

Presently before the Court are (1) the MDOC Defendants' Motion to

Dismiss and (2) the Non-MDOC Defendants' Motion to Dismiss, both filed

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Each motion has been fully

briefed.  Having determined that oral argument would not significantly aid the

decisional process, the Court dispensed with oral argument pursuant to Eastern

District of Michigan Local Rule 7.1(f)(2).  For the reasons stated herein, the Court

will grant in part and deny in part the MDOC Defendants' Motion and will deny

the Non-MDOC Defendants' Motion.

## I.    BACKGROUND

**A.    The Parties**

Plaintiff, who was appointed the as the personal representative of the Estate

of Sidney Gurley on September 21, 2011 in the Oakland County Circuit Court,[1]

---

[1] Case No. 2011-338,502-DE.  (Am. Compl. ¶ 14.)

2

filed this civil rights and wrongful death action in both her individual and representative capacities.  (Am. Compl. ¶¶ 14, 16.)

Although there were initially eleven named defendants named in the present action (as reflected by the case caption), Plaintiff explains that Defendants Paula Meyer, Rosilyn Jindahl, Daniel Ducatt, and Anil Prasad are not named as defendants in the Amended Complaint, and, therefore, "are no longer parties."[2] (Pl.'s Resp. to Non-MDOC Defs.' Mot. ¶ 9.)

The remaining defendants, who are "being sued in their individual capacities[,]" (Am. Compl. ¶ 25), are separated into two groups.[3]  First, there are the MDOC Defendants: Corrections Officers Thomas Blair and Susan Frye-Latta, and Registered Nurses Beth Fritz, Kimberly McGuire,[4] and James MacNamara.[5] These individuals work, or at least worked, at GHCF as MDOC employees at the time of the events giving rise to the instant action.  Also included in this group of defendants is an individual identified as "Officer Cato" (who is alternatively

---

[2] Accordingly, these four individuals are **DISMISSED** from this action.

[3] Because the Amended Complaint specifies that each Defendant is being sued in their individual capacity, the Court need not address the MDOC Defendants' claimed entitlement to Eleventh Amendment immunity.

[4] Defendant McGuire is referenced once in the Amended Complaint at paragraph 39.

[5] Defendant MacNamara is also referred to as McNamara.  Other than including his name in the case caption, there are no allegations in the Amended Complaint that mention him.

3

referred to as Ciats or Ciato).  However, according to the MDOC Defendants'
Brief, this individual "has not been located to be served."  (MDOC Defs.' Br. 1
n.2.)

Having abandoned claims against other the healthcare contractors, the only
remaining Non-MDOC Defendant is physician's assistant Savithiv Kakani,[6] who is
an employee of Corizon, a medical contractor of the MDOC.

**B.    Events Giving Rise to the Instant Action**

On August 6, 2011, Gurley, who was forty-nine-years old, died while
incarcerated at the GHCF.  (Am. Compl. ¶ 36.[7])  According to a coroner's report
attached to Plaintiff's Complaint,[8] Gurley "died of acute peritonitis caused by
perforated acute appendicitis."  (Coroner's Report 4.)  The medical examiner noted
that an autopsy performed the day following Gurley's death revealed "pus
discharge in the peritoneal cavity and dilation of entire small bowel covered by
thin layer of fibrin.  The appendix was dark to greenish necrosis with grossly

---

[6] The Court's docket shows a Savithiv Kakan, not Kakani, as a named
defendant.  However, the parties both refer to a Savithiv Kakani, and the Court
shall do the same.  (*See, e.g.*, Am. Compl. ¶ 1.)

[7] Paragraph 29 of the Amended Complaint appears to erroneously state the
date of Gurley's death as August 6, 2009.

[8] The Court notes that the coroner's report was not attached to Plaintiff's
Amended Complaint, but rather attached as Exhibit A to Plaintiff's original
complaint.  However, the report is referenced in the Amended Complaint.  (Am.
Compl. ¶ 30.)  The Court further notes that the coroner's report states that Gurley
was forty-six, not forty-nine, years of age at the time of his death.

recognizable hole in the mid shaft.  The mesentery around ileo-cecal region also appeared greenish swelling." (*Id.*)

According to the allegations in the Amended Complaint, "[p]eritonitis is an inflammation of the membrane that lines the inside of the abdomen and all of the internal organs." (Am. Compl. ¶ 31.)  Those suffering from peritonitis typically exhibit the following symptoms: "fever, severe abdominal pain, nausea and vomiting." (*Id.* ¶ 32.)  "The usual sounds made by the active intestine and heard during examination with a stethoscope will be absent [in an individual with peritonitis], because the intestine stops functioning." (*Id.* (underlining removed).)  Gurley exhibited these symptoms before his death. (*Id.* ¶ 33.)

Approximately six days before Gurley died, "and after having consumed a meal[,]" Gurley began to complain of feeling ill. (*Id.* ¶ 34.)  On August 3, 2011, Gurley sought medical treatment from the healthcare unit at GHCF, indicating that he believed he was suffering from food poisoning. (*Id.* ¶¶ 36-37.)  Plaintiff maintains that Gurley had been complaining of abdominal pain and expressed that he was having difficulty passing a bowel movement. (Am. Compl. ¶¶ 34-35.)  Gurley also indicated that he had started to defecate, urinate, and vomit blood. (*Id.* ¶ 35.)  On that day, Gurley informed the medical staff in the healthcare unit – non-parties Dr. Prasad and Jindahl, as well as Defendants Kakani, McGuire, and Fritz – that he was vomiting, urinating, and defecating blood. (*Id.* ¶¶ 38-39.)  After

sharing his concerns, Gurley "begged to be transferred to a hospital."  (*Id.* ¶ 42.)

Physician's assistant Kakani and nurse Fritz "failed to treat" Gurley, despite

knowing of his serious medical condition.  (*Id.* ¶¶ 40-41.)

Without any explanation, the Amended Complaint then alleges that "[t]he

cholesterol reducing medicine aggravated [Gurley's] condition causing more

severe abdominal pains; so [Gurley] told Defendant GH[CF] staff that he needed to

go back to the GHCF healthcare unit."  (*Id.* ¶ 43.)  "Despite their knowledge of"

Gurley's "serious medical condition, Defendant GHCF medical staff told [Gurley]

that he would have to wait another 2-3 days before again allowing him to return to

the GHCF healthcare unit."  (*Id.* ¶ 44.)

Upon the expiration of this two to three day period, Gurley "was so

incapacitated and weak that other inmates had to help him walk to the healthcare

facility for a second visit."  (*Id.* ¶ 48.)  As with the first visit, Defendants Kakani

and Fritz were involved in this second visit, as they both knew of his condition and

failed to treat him.  (*Id.* ¶¶ 49-50.)   Instead, these Defendants instructed Gurley "to

return to his cell and ordered that he be conferred 'medical lay in' status; which

means he was to remain in bed."  (*Id.* ¶ 51 (underlining removed).)

Gurley continued to request treatment, as did other inmates who observed

Gurley's degenerating health.  Gurley's "deteriorating condition was so apparent

that other inmates requested that GHCF staff" – Defendants Latta, Blair, and Cato

6

– "obtain medical treatment for" Gurley "and/or check on his condition." (*Id.* ¶ 58.) These requests, however, went unanswered and no medical treatment was provided. (*Id.* ¶¶ 57, 59.) As a result of not being able to obtain treatment, Gurley "died an excruciatingly painful death in his prison cell[,]" where, on August 6, 2011, he was found after being ordered to remain on medical lay-in status. (*Id.* ¶¶ 62-64.)

Plaintiff supports the assertions regarding Defendants' knowledge of Gurley's condition and their disregard of his requests for treatment by including statements from various inmates who were incarcerated with Gurley at the time of his death. (Am. Compl. ¶ 65 (statements from Joseph Hamilton dated August 8, 2011, Bernard Fields on August 7, 2011, James Street, Jr. on August 5, 2011, Daryl Young, Rodney Stevenson on August 8, 2011, and Robert James on August 10, 2011).)

## C.   Prior Lawsuit

On November 29, 2012, Plaintiff filed case number 12-15251 in the United States District Court for the Eastern District of Michigan, and the undersigned presided over that action (the "2012 Action). Plaintiff filed an amended complaint in that lawsuit on April 25, 2013. The 2012 Action involved the same events and substantially similar claims. The only new defendant in the present action is Defendant Blair.

7

On July 24, 2013, the Court granted the Non-MDOC Defendants' motion to dismiss and dismissed the moving defendants with prejudice.  Defendants Meyer and Ducatt were dismissed from the 2012 Action on September 26, 2013, after Plaintiff failed to show cause regarding the failure to serve them.  On April 1, 2014, the Court issued an Opinion and Order dismissing Plaintiff's claims against the MDOC Defendants.  This dismissal was without prejudice.  The Court also used the April 1, 2014 Opinion and Order to *sua sponte* reconsider its July 24, 2013 dismissal of the Non-MDOC Defendants, and amended its previous order to dismiss the Non-MDOC Defendants without prejudice.  The Court's Order, therefore, dismissed the amended complaint without prejudice as to all defendants and gave Plaintiff twenty-one days from receipt of the Opinion and Order to file a second amended complaint.

**D.    Institution of the Present Civil Action**

In lieu of filing a second amended complaint in the 2012 Action, Plaintiff instituted this action on July 22, 2014, filing the Amended Complaint on October 13, 2014.  The Amended Complaint, filed using the statutory vehicle of 42 U.S.C. § 1983, contains the following counts: Count I – "Failure to Provide Medical Treatment" pursuant to the Eighth and Fourteenth Amendments; Count II – "Loss of Life" pursuant to the Eighth and Fourteenth Amendments; Count III – "Gross Negligence – Wrongful Death"; and Count IV – "Acting in Concert."  Counts I and

8

II are repetitive, and the Court, therefore, shall address them as a single count

under the Supreme Court's Eighth Amendment jurisprudence.[9]

Jurisdiction is predicated upon federal question jurisdiction, 28 U.S.C. §

1331, civil rights jurisdiction, 28 U.S.C. § 1343(3), and supplemental jurisdiction,

28 U.S.C. § 1367.

## II.    GOVERNING LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a

court to assess whether a plaintiff's complaint states a claim upon which relief can

be granted.  As articulated by the Supreme Court of the United States, "[t]o survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

---

[9] The Court notes that paragraph 2 of the Amended Complaint references a violation of Gurley's Fourth Amendment rights.  Because the Fourth Amendment is neither mentioned again nor relevant, the Court presumes this was a mere typographical error.

Further, the Court presumes that the Fourteenth Amendment is referenced in relation to the doctrine of incorporation, thus making the cruel and unusual punishment clause applicable to the States.  *See, e.g.*, *Robinson v. California*, 370 U.S. 660, 666, 82 S. Ct. 1417, 1420 (1962).  To the extent this presumption is inaccurate, it is of no moment.  The Court does not believe that the Fourteenth Amendment claim states a claim as the Eighth Amendment provides the proper vehicle to analyze claims of inadequate medical treatment in the prison setting.  *Cf. United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 1228 n.7 (1997) (discussing *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870-71 (1989), an excessive force case, and explaining that "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").  Accordingly, the Court addresses only Plaintiff's allegations concerning the Eighth Amendment.

9

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)).  This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).  In this regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant" is responsible for the conduct alleged in the complaint.  *Id.* (citation omitted).  Thus, even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citation omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief

10

must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

### III.   LAW AND ANALYSIS

#### A.   Parties' Arguments

Both sets of Defendants seek dismissal of Plaintiff's Amended Complaint on the basis that (1) the action is barred by the doctrine of *res judicata*, specifically claim preclusion, and (2) that the pleading fails to state a viable federal claim because it lacks the requisite factual enhancement required by *Twombly* and its progeny.  Further, because the federal claim fails, the Court should decline to exercise supplemental jurisdiction over the state law claims.

#### B.   Are Plaintiff's Claims Barred by the Doctrine of *Res Judicata*?

Defendants contend that the 2012 Action precludes the instant lawsuit, relying on the rule that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 2428 (1981) (citations omitted).

The United States Court of Appeals for the Sixth Circuit employs a four-part test in "determining whether a subsequent action is barred by the doctrine of *res*

11

*judicata*, or to be more precise in this circumstance, claim preclusion." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006). As the *Rawe* Court explained, "*res judicata* has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Id.* (alteration and quotation omitted).

The parties dispute whether this Court's April 1, 2014 dismissal of the 2012 Action constituted a final decision on the merits. Certainly, the dismissal of an action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) can be a "judgment on the merits." *Moitie*, 452 U.S. at 399 n.3, 101 S. Ct. at 2428 n.3 (citations omitted); *Guzowski v. Hartman*, 849 F.2d 252, 255 (6th Cir. 1988) ("It is well established that the sustaining of a motion to dismiss for insufficiency of the complaint serves as an adjudication on the merits *unless* the court specifies otherwise.") (emphasis in original) (citations omitted); *see also* Fed. R. Civ. P. 41(b) (" . . . Unless the dismissal order state otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule . . . operates as an adjudication on the merits."). However, when a district court dismisses an action without prejudice, a subsequent suit is not barred by *res judicata*. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2373 (1971) ("The court may always

12

specify that a dismissal is without prejudice.  This creates no problem and a suit is not barred."); *see also* Restatement (Second) of Judgments § 26(1)(b) (1982) ("When any of the following circumstances exists, the general rule . . . does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: . . . The court in the first action has expressly reserved the plaintiff's right to maintain the second action. . . .").

In its April 1, 2014 Opinion and Order, the Court dismissed the 2012 Action without prejudice and gave Plaintiff twenty-one days to file a second amended complaint.  According to the MDOC Defendants, "[h]owever, the without prejudice dismissal was premised on the opinion's language that Plaintiff could follow up with a Second Amended Complaint within [twenty-one] days.  Plaintiff did not file an [a]mended [c]omplaint within the time period established by the Court.  Hence, the decision in the 2012 case was a final decision on the merits that cannot now be relitigated."  (MDOC Defs.' Br. 4-5.)  Similarly, the Non-MDOC Defendants contend that the Court "stated that the dismissals were without prejudice at that time for the purpose of giving Plaintiff the opportunity to file a Second Amended Complaint; however, the Court ordered that Plaintiff would have to file a Second Amended Complaint within twenty-one (21) days from receipt of the Order. . . .  Plaintiff never filed a Second Amended Complaint, and the case

was closed effective April 1, 2014." (Non-MDOC Defs.' Br. 2.) The Court is not persuaded by Defendants' position.

It is indeed true that the Court's Order permitted Plaintiff to amend the complaint in the 2012 Action, and provided a period of twenty-one days from receipt of the Opinion and Order in which to do so. If Plaintiff had attempted to file a second amended complaint after the expiration of that time period, an argument that it was untimely would have been well-taken. In other words, if Plaintiff failed to file a second amended complaint within the timeframe prescribed in the Court's Order, Plaintiff could not file a second amended complaint. This, however, is not what happened. Plaintiff did not file a second amended complaint, but rather instituted a new civil action. Because the Court dismissed the prior action without prejudice, Plaintiff was within her rights to proceed as she did, as a dismissal without prejudice contemplates, and indeed permits, a litigant to take such a course of action.

The Court acknowledges the authority relied upon by Defendants, specifically, *Ohio Carpenters Central Collection & Administrative Agency v. B. P. Jenkins, Inc.*, Nos. 90-3208, 90-3236, 1991 U.S App. LEXIS 4234 (Mar. 11, 1991) (unpublished) (per curiam). In that case, the parties settled the underlying action, and the district court entered an order of dismissal "without costs and without prejudice to the right, upon good cause shown within sixty (60) days, to reopen the

14

action if settlement is not consummated." *Id.* at \*1-2. Fifteen months after the entry of the district court's order, the plaintiffs filed a motion to reopen the case, which the district court denied. *Id.* at \*2. The Sixth Circuit rejected the plaintiffs' argument that the district court's "without prejudice" language did not constitute an adjudication on the merits for purposes of *res judicata*. The Court explained:

> We agree with the district court that the language of the order of dismissal is properly interpreted to mean that the case was dismissed without prejudice for the first 60 days only, and after expiration of the 60 days was converted to a dismissal with prejudice. Thus, the order of dismissal operated as an adjudication on the merits after 60 days because no further action was taken by the plaintiffs within that time period. Because plaintiffs were precluded from reopening the case after 60 days, they were precluded from refiling a second suit against the defendant for claims arising before the expiration of the 60-day period following the order of dismissal.

*Id.* at \*3.

While the *Ohio Carpenters* case is persuasive authority, as an unpublished opinion, it is not binding. Although the Court's Order in the 2012 Action did not expressly reserve Plaintiff's right to maintain a second action, the Court did explicitly state that the dismissal was without prejudice. *Guzowski*, 849 F.2d at 255. The dismissal without prejudice was not explicitly conditioned upon the filing of a second amended complaint, as the Court did not indicate that the dismissal without prejudice would be converted into one with prejudice should Plaintiff choose not to file an amended pleading within the twenty-one day period.

Because a dismissal without prejudice is not a final adjudication on the merits, *res judicata* does not bar the instant lawsuit.

**C.     Does the Amended Complaint State a Viable Federal Claim?**

*1.     Governing Legal Standards: Section 1983 and Qualified Immunity*

Plaintiff contends that Defendants are liable because their medical treatment – or failure to treat – amounted to "deliberate indifference" of Gurley's serious medical needs in violation of the Eighth Amendment to the United States Constitution. This claim arises under 42 U.S.C. § 1983, which creates a civil cause of action against individuals who, while acting under color of state law, deprive a person of the "rights, privileges or immunities secured by the Constitution or laws of the United States."[10] "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citation omitted). "Section 1983 claims, however, are subject to the affirmative defense of qualified immunity, which, if applicable, shields individuals not just against liability, but against the suit itself." *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (citation omitted). Once an official

---

[10] Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000).

16

raises the defense of qualified immunity, the burden is on the plaintiff to demonstrate that the defense is unwarranted. *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011).

Under the doctrine of qualified immunity, "government officials[,]" including state prison employees, *Reilly*, 680 F.3d at 623, "performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). To survive a Rule 12(b)(6) motion, the facts as alleged, viewed in the light most favorable to the plaintiff, must show that the defendant violated a constitutional right and that the right was clearly established. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).

## 2.   *Governing Legal Standard – Deliberate Indifference and the Eighth Amendment*

Here, Plaintiff alleges that Gurley was deprived of his rights protected by the Eighth Amendment's prohibition against cruel and unusual punishment. U.S. Const. amend. VIII ("[C]ruel and unusual punishments [shall not be] inflicted."). The Eighth Amendment embodies "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . .,' against which [courts] must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 290

17

(1976) (internal citation omitted).  These principles give rise to a governmental "obligation to provide medical care for those whom it is punishing by incarceration."  *Id.* at 103, 97 S. Ct. at 290; *see also Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014) (unpublished) ("Pursuant to the Eighth Amendment, 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny.'") (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993)); *Baker v. City of Detroit*, 217 F. App'x 491, 495 (6th Cir. 2007) (unpublished) ("The Supreme Court in *Deshaney* [*v. Winnebago Cnty. Dept. of Social Servs.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005 (1989)] recognized a line of cases 'stand[ing] . . . for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'").  Such an obligation arises because inmates "must rely on prison authorities to treat [their] medical needs; if the authorities fail to do so, those needs will not be met."  *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290.  Even in non-life-threatening cases, "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose."  *Id.*

To sustain a § 1983 claim arising from the Eighth Amendment's prohibition against cruel and unusual punishment and based on the adequacy of medical

treatment, Plaintiff must plead facts which, if true, demonstrate that a defendant acted with deliberate indifference to Gurley's serious medical needs in diagnosing or treating him. *See, e.g.*, *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Deliberate indifference claims consist of two components, one objective and the other subjective. *Id.* "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quotation omitted).

To discharge the burden with respect to the objective prong, Plaintiff must plead facts establishing the existence of a "sufficiently serious" medical condition. *Blackmore*, 390 F.3d at 895. A "sufficiently serious" medical need requires Plaintiff to "show that [Gurley was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 571 (6th Cir. 2013). "Such a medical need has been defined as one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

19

Plaintiff then must establish the subjective element, which requires Plaintiff to plead facts demonstrating that Defendants acted with "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895. "Only 'deliberate indifference' to serious medical needs will implicate the protections of the Eighth Amendment."[11] *Reilly*, 680 F.3d at 624. While deliberate indifference entails something more than mere negligence or even gross negligence, the standard is satisfied by something less than acts or omissions for the purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835-36, 114 S. Ct. at 1978; *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (unpublished). In short, "[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm[.]" *Wright*, 79 F. App'x at 831 (citation omitted); *accord Farmer*, 511 U.S. at 836-38, 114 S. Ct. at 1978-79 (equating "deliberate indifference" to the "recklessness" standard under criminal, not civil, law). Thus, the subjective component requires proof that (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the [prisoner]," (2) the official "did in fact draw that inference," and (3) the official "then

---

[11] It must be remembered that "the Eighth Amendment prohibits mistreatment only if it is tantamount to punishment, and thus courts have imposed liability upon prison officials only where they are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006) (internal quotation marks omitted).

disregarded that risk." *Quigley*, 707 F.3d at 681 (internal quotations omitted).[12]

"Indeed, '[k]nowledge of the asserted serious needs or of circumstances clearly

indicating the existence of such needs, is essential to a finding of deliberate

indifference.'" *Reilly*, 680 F.3d at 624 (quoting *Blackmore*, 390 F.3d at 896).

"Where a prisoner has received some medical attention and the dispute is

over the adequacy of the treatment, federal courts are generally reluctant to second

guess medical judgments and to constitutionalize claims which sound in state tort

law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  The Sixth Circuit

acknowledges that "[a] claim of inadequate medical treatment[,]" as opposed to a

claim of a complete denial of medical treatment, "may state a constitutional claim"

but cautions that such claims are generally limited to situations where "the

treatment rendered is 'so woefully inadequate as to amount to no treatment at all.'"

*Clark v. Corrs. Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004) (unpublished)

(citing *Westlake*, 537 F.2d at 860-61); *Terrance v. Northville Reg'l Psychiatric

Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002) ([M]edical care which is so cursory as

to amount to no treatment at all may amount to deliberate indifference[.]") (internal

quotation marks and citation omitted).

---

[12] "Officials, of course, do not readily admit this subjective component, so 'it
[is] permissible for reviewing courts to infer from circumstantial evidence that a
prison official had the requisite knowledge.'" *Phillips v. Roane Cnty.*, 534 F.3d
531, 540 (6th Cir. 2008) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th
Cir. 2001)).

**3.      *Application – Was there a Constitutional Violation?***

   *a.      Objective Prong*

In the instant case, Plaintiff has adequately pled the existence of a sufficiently serious medical condition, as the medical examiner noted peritonitis and appendicitis after conducting an autopsy.  Gurley complained orally to both correctional officers and the prison medical staff about sharp and severe stomach pains over the period of several days.  He also explained that he was vomiting, urinating, and defecating blood – each of which is "a clear manifestation of internal physical disorder."  *Blackmore*, 390 F.3d at 899 (describing vomiting as such and further indicating that appendicitis was a serious medical condition satisfying the objective prong of a deliberate indifference claim).  Plaintiff has also alleged that other inmates were aware of Gurley's need for medical attention based on his symptoms.  These facts sufficiently plead that Gurley "had a serious medical need for medical care that was 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  *Id.* (quotation omitted).  Plaintiff has therefore satisfied the objective component of a deliberate indifference claim.

   *b.      Subjective Prong*

The remaining issue becomes whether the Amended Complaint supports Plaintiff's claim that each Defendant acted with the requisite culpability: that of deliberate indifference to Gurley's serious medical needs.  In other words, the

22

Court must assess "(1) whether the facts when viewed in the light most favorable to [Plaintiff] show that the Defendants had subjective knowledge of [Gurley]'s serious need for medical attention; and (2) provided they did, whether the Defendants disregarded that need."  *Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008).

"Because it is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct, this Court analyzes separately the allegations concerning the conduct of each Defendant."  *Reilly*, 680 F.3d at 624-25 (citing *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) and *Iqbal*, 556 U.S. at 676, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")).

     i.  Defendant Corrections Officers (Blair, Cato, and Frye-Latta)

Plaintiff claims that MDOC Defendants Blair, Cato, and Frye-Latta, all corrections officers at GHCF, were deliberately indifferent to Gurley's serious medical needs.  Because Defendant Cato has not been located, and therefore has not been served, the Court dismisses Cato from this action.

The Amended Complaint alleges that both Blair and Frye-Latta were GHCF employees and that they "acted within the scope of [their] employment and under color of state law[.]"  (Am. Compl. ¶¶ 18, 20.)  It further indicates that other

23

inmates at the facility requested that Blair and Frye-Latta obtain medical treatment for Gurley, or that they at least check on his condition.  (*Id.* ¶ 58.)  These requests went unanswered.  (*Id.* ¶ 60.)  In the MDOC Defendants' Brief, it is contended that these allegations are insufficient to state a claim because, in order to survive a Rule 12(b)(6) motion, a pleading must allege with at least some degree of particularity the overt acts engaged in that constituted the alleged constitutional rights violation. (MDOC Defs.' Br. 8 (citing, *inter alia*, *Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008)).)  Specifically, the MDOC Defendants argue, the paucity of facts in the Amended Complaint detailing the individual roles each corrections officer had in Gurley's requests for medical care is fatal to Plaintiff's claim.  While recognizing the pleading is not teeming with facts, the Court concludes that the factual allegations, construed in the light most favorable to Plaintiff, are sufficient to state a claim against Defendants Blair and Frye-Latta.

A fair inference from any reading of the Amended Complaint is that Blair and Frye-Latta worked in the unit at GHCF in which Gurley was housed.  Gurley fell ill on or about August 1, 2011 and was found dead in his cell less than one week later.  The Amended Complaint alleges that several other inmates were aware of Gurley's serious medical condition because his deteriorating condition was obvious to a lay observer.  While Blair and Frye-Latta have not admitted knowing of Gurley's condition, officials rarely make such admissions.  Further, "it [is]

24

permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge." *Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008) (quotation omitted). For instance, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842, 114 S. Ct. at 1981. Plaintiff has alleged that the risk was obvious here.

In sum, the Court concludes that Plaintiff has sufficiently alleged that Defendants Blair and Frye-Latta had been exposed to Gurley's serious medical condition between August 1 and August 6, therefore possessing the requisite knowledge of Gurley's serious medical condition. Their inaction in the face of such knowledge is demonstrative of a disregard of Gurley's serious medical needs. Plaintiff has discharged her burden with respect to the subjective component of a deliberate indifference claim against these Defendants.

> ii.  Medical Staff (Fritz, McGuire, McNamara, and Kakani)

Plaintiff also contends that nurses Fritz, McGuire, McNamara, and physician's assistant Kakani were deliberately indifferent to Gurley's serious medical needs.   Defendants contend that dismissal is proper pursuant to Rule 12(b)(6), because the Amended Complaint does not contain specific facts regarding each individual's role in Gurley's alleged requests for medical care and no facts setting forth what role they had in Gurley's medical treatment.

25

The Court agrees that the Amended Complaint fails to state a claim against Defendant McNamara, as the pleading does not even allege that McNamara was present in the healthcare unit when Gurley was there.  The Court also agrees that the single reference to Defendant McGuire is insufficient to state a claim against her.  The pleading does not allege that McGuire knew of Gurley's medical needs, only that she was present in the healthcare unit, and therefore fails to state a claim against her.  *Cf. Reilly*, 680 F.3d at 626 ("Plaintiff must state a plausible constitutional violation against each individual defendant – the collective acts of defendants cannot be ascribed to each individual defendant.") (citations omitted).

The Court does not agree, however, that the claims against Fritz and Kakani are subject to dismissal pursuant to Rule 12(b)(6).  As the Sixth Circuit has indicated, "[i]n cases involving mistreatment by medical personnel, this Court has held that 'less flagrant conduct [than that of other government officials] may constitute deliberate indifference.'"  *Phillips*, 543 F.3d at 544 (alteration in original) (quoting *Terrance*, 286 F.3d at 843).  The *Phillips* panel further explained:

> Although a government doctor may be entitled to qualified immunity, to be so he "has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm."  *LeMarble v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001).

26

*Id.* In order to determine whether a medical practitioner's conduct rose to the level described above, courts "ask whether a reasonable doctor in his position could have concluded that a substantial risk of serious harm to [the patient] existed. *Id.* (citing *LeMarble*, 266 F.3d at 439).

The facts as alleged by Plaintiff and taken in the light most favorable to her give rise to a plausible claim that Defendants Fritz and Kakani knew of and consciously disregarded a serious medical risk to Gurley.  The Amended Complaint alleges that Gurley told the medical staff that he was vomiting, urinating, and defecating blood, which this Court has already concluded is demonstrative of a serious medical condition.  Instead of probing further or sending Gurley to the hospital, the Amended Complaint alleges that Gurley was given cholesterol reducing medicine.  When this medication exacerbated Gurley's abdominal pain, the medical staff indicated that Gurley would have to wait another two to three days to receive further treatment.  The pleading specifically references Fritz and Kakani's knowledge of Gurley's serious medical condition and their disregard of that condition.  The Court believes that these allegations, taken as true for purposes of a Rule 12(b)(6) motion, are sufficient to establish that this group of Defendants possessed knowledge of Gurley's serious need for medical attention and disregarded that risk.

**4.** ***Was the Law Clearly Established?***

27

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Phillips*, 534 F.3d at 545 (quotation and internal quotation marks omitted).

At the time of Gurley's death, the jurisprudence involving deliberate indifference to a prisoner's serious medical needs was clearly established. *See, e.g.*, *Warren v. Prison Health Servs.*, 576 F. App'x 545, 560 (6th Cir. 2014) (unpublished) ("[A]n inmate's right to receive medical treatment for a serious medical need was clearly established by 2010.") (footnote omitted).

### 5.     *Summary*

Plaintiff has sufficiently stated an Eighth Amendment deliberate indifference claim against MDOC Defendants Blair, Fritz, Frye-Latta, and Non-MDOC Defendant Kakani.

### D.     State Law Claims

Defendants contend that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  This contention is rooted in their belief that Plaintiff has failed to state a viable constitutional claim. Because the Court has determined that Plaintiff's deliberate indifference claim against Blair, Fritz, Frye-Latta, and Kakani withstands dismissal, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.   CONCLUSION AND ORDER

For the reasons set forth herein, the Court concludes that Plaintiff's

Amended Complaint states viable claims against Defendants Blair, Fritz, Frye-

Latta, and Kakani.

Accordingly,

**IT IS ORDERED** that the MDOC Defendants' Motion to Dismiss is

**GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that the Non-MDOC Defendants' Motion to

Dismiss is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants Meyer, Jindahl, Ducatt,

McGuire, McNamara, Prasad are **DISMISSED** from this action **WITH**

**PREJUDICE**;

**IT IS FURTHER ORDERED** that Defendant Cato is **DISMISSED** due to

a lack of service upon him or her.

Dated: February 20, 2015

                                     s/PATRICK J. DUGGAN
                                     UNITED STATES DISTRICT JUDGE

Copies to:

**Thomas E. Kuhn, Esq.**
**David A. Robinson, Esq.**
**A. Peter Govorchin, A.A.G.**
**Cori E. Barkman, A.A.G.**
**Carly A. Van Thomme, Esq.**
**Ronald W. Chapman, Esq.**